# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIE E. BERRY, JR. (#354431)**                    **CIVIL ACTION**

**VERSUS**                                             **NO. 17-0318-BAJ-EWD**

**MAJOR NICHOLAS J. SANDERS**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 16, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIE E. BERRY, JR. (#354431)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-0318-BAJ-EWD** |
| **MAJOR NICHOLAS J. SANDERS** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss ("Motion") filed on behalf of defendant Nicholas J. Sanders ("Defendant" or "Sanders").[1] The Motion is opposed by Plaintiff Willie E. Berry, Jr. ("Plaintiff").[2] For the following reasons, it is recommended that Defendant's Motion be **GRANTED IN PART AND DENIED IN PART**.

I.   **Background**

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Sanders in Sanders' official and individual capacities.[3] Plaintiff has alleged two instances of excessive force, the second of which Plaintiff contends also constitutes retaliation.[4]

---

[1] R. Doc. 19.
[2] R. Doc. 24.
[3] R. Doc. 1.
[4] Prior to the two instances of which Plaintiff complains, he mentions another interaction between Plaintiff and Sanders. Specifically, Plaintiff alleges that on June 22, 2016, Sanders was summoned to Plaintiff's cell to manage a "minutes-earlier unruly conflict between Plaintiff and one male officer…." (R. Doc. 1, ¶ 8). Sanders allegedly "became irate, vehemently spewing unpleasant vulgarities towards Plaintiff." (R. Doc. 1, ¶ 9). At some point after the conflict, Sanders allegedly told Plaintiff that he "had come awfully close to unleashing 'a can of hot/spicy fire on the plaintiff's a—' prior to activating the camera." (R. Doc. 1, ¶ 1). Plaintiff also complains that the body camera possessed by Sanders was "belatedly" activated, in violation of new prison policy, which requires recordation of "all serious incidents" between jailors and prisoners. (R. Doc. 1, ¶ 10). Plaintiff does not argue that this first encounter, consisting of only verbal threats, constituted a violation of his constitutional rights.  *See*, R. Doc. 24, ¶ 9 ("The 22 June – incident is an element intended to prove a pattern of the Defendant's 'tendencies' to violate a prisoner.") (emphasis in original) Regardless, the use of mere language, even threats, is insufficient to support a claim under the Eighth Amendment. *See Johnson v. Bradford*, 72 F. App'x. 98, 99 (5th Cir. 2003); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983) (finding that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").

On July 12, 2016, Sanders was summoned to Plaintiff's cell to manage a conflict between Plaintiff and a female nurse, Tequila Parker.[5] Plaintiff was ordered to disrobe for a strip search, to which order, Plaintiff avers that he "immediately complied."[6] Despite Plaintiff's alleged immediate compliance and full nudity, Sanders "discharged an apprx. 3-4 seconds bursts of burning chemicals all over the Plaintiff's nude person."[7] Thereafter, Sanders allegedly began "yelling profanities towards the Plaintiff, including the following statement: 'I'm going to make you feel fire, for throwing a cup of water at my baby.'"[8]

After the initial interaction on July 12, 2016, Sanders restrained Plaintiff and escorted Plaintiff to the shower cell.[9] Plaintiff alleges that, as a means to inflict further pain, Sanders denied Plaintiff the opportunity to actually shower to rid himself of the burning chemicals.[10] At some point, the Plaintiff alleges he lost consciousness and was treated by LSP medical personnel.[11] Allegedly, after nearly five hours had passed, Plaintiff was finally given the opportunity to shower to rinse off the chemicals.[12] The following day, Plaintiff states that he sought medical attention for lingering burning effects of the chemicals and was prescribed pain relief medications.[13]

On July 30, 2016, Plaintiff filed a grievance against Sanders alleging "all relevant and specific details of the Defendant's violating acts" relating to the July 12, 2016 incident.[14] Thereafter, on October 13, 2016, Sanders allegedly confronted Plaintiff in his cell regarding the grievance filed by Plaintiff related to the July 12, 2016 incident.[15] Plaintiff was ordered to step to

---

[5] R. Doc. 1, ¶ 16.
[6] R. Doc. 1, ¶ 17.
[7] R. Doc. 1, ¶ 18.
[8] R. Doc. 1, ¶ 20.
[9] R. Doc. 1, ¶ 22.
[10] R. Doc. 1, ¶ 25.
[11] R. Doc. 1, ¶ 26.
[12] R. Doc. 1, ¶ 28.
[13] R. Doc. 1, ¶ 33.
[14] R. Doc. 1, ¶ 39.
[15] R. Doc. 1, ¶ 40.

the cell bars. Plaintiff alleges that he immediately complied, at which time, Sanders entered Plaintiff's cell and attacked Plaintiff "with a combination of fist blows" causing injuries to Plaintiff.[16] Plaintiff sought medical treatment that same evening.[17]

Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights, specifically alleging acts of excessive force, retaliation, and a denial of equal protection.[18] He also alleges state law tort claims.[19] Plaintiff also seeks a permanent injunction "ordering the authoritative employers (La. DOC/LSP) of the Defendant to have all stationary cameras, that are already fixated on the wall of Camp J lockdown unites, abled [sic] to record, just as other cameras do throughout most of LSP's units."[20]

## II. Law and Analysis

### A. Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[21] and *Ashcroft v. Iqbal*,[22] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[23] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] It follows that,

---

[16] R. Doc. 1, ¶¶ 41-42.
[17] R. Doc. 1, ¶ 44.
[18] R. Doc. 1, ¶ 1.
[19] R. Doc. 1, ¶ 1.
[20] R. Doc. 1, ¶ 55.
[21] 550 U.S. 544 (2007).
[22] 556 U.S. 662 (2009).
[23] *Bell Atlantic Corp*. 550 U.S. at 555.
[24] *Ashcroft*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544.
[25] *Id*.

4

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[26]  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[27]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[28]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[29]  Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[30] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[31] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[32] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[33]

### B. Eleventh Amendment Immunity

Defendant avers, and is correct, that all monetary claims levied against him in his official capacity are barred. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[34]

---

[26] *Id.* at 679.
[27] *Id.* at 678 (internal quotation marks omitted).
[28] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[29] *Id.* (citation omitted).
[30] Fed. R. Civ. P. 8(a)(2).
[31] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[32] *Papasan v. Allain*, 478 U.S. 265, 286 (1986),
[33] *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).
[34] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

In addition, in *Hafer v. Melo*,[35] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[36] Accordingly, the Plaintiff's § 1983 claims asserted against the Defendant in his official capacity for monetary damages are subject to dismissal.

In contrast, the plaintiff's § 1983 claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.[37] Additionally, Plaintiff includes a request for a permanent injunction in his Complaint. The law is clear that a claim for injunctive relief asserted against a state employee in an official capacity is not barred by the Eleventh Amendment because such a claim is not seen to be a claim asserted against the state.[38]

### C. Qualified Immunity

Defendant alleges he is entitled to qualified immunity. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[39] Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two

---

[35] 502 U.S. 21 (1991).
[36] *Id*. at 25.
[37] *Id*. at 29.
[38] *See Will*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d Civil Rights § 101.
[39] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).

prongs of the analysis to address first.[40] This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[41] To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. Although a plaintiff can file a detailed reply to address the assertion of the qualified immunity defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct.[42] If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[43]

1. **Excessive Force**

It is axiomatic that corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force against

---

[40] 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[41] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quotations and citations omitted).
[42] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*).
[43] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (*en banc*).

7

a prisoner. When force is used, a corrections officer must also exercise discretion to determine the appropriate amount of force.[44]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[45] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[46] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[47] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[48]

Viewing the facts in the light most favorable to Plaintiff, he has alleged sufficient facts to overcome the qualified immunity defense. Relative to the July 12, 2016 incident, Plaintiff asserts that he fully complied with Defendant's orders, but while fully nude and compliant, Defendant proceeded to douse Plaintiff in a noxious chemical. Then, Plaintiff alleges he was left without relief from the burning chemicals for five hours. While Defendant argues that Plaintiff admits he was involved on this date in "an unruly conflict" with a female nurse and that Defendant responded

---

[44] *See, e.g., Henry v. North Texas State Hospital*, Civ. Action No. 12-cv-198, at *3, 2013 WL 3870292 (N.D. Tex. July 9, 2013) ("Qualified immunity is available to public officials such as prison guards and state hospital employees who must exercise discretion.")
[45] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[46] *Wilkins*, 559 U.S. at 38.
[47] *Hudson*, 503 U.S. at 10.
[48] *Id.* at 7.

8

to that conflict, Plaintiff's version of events *after* Defendant's arrival at the cell is sufficiently detailed to overcome Defendant's assertion of qualified immunity regarding this incident. With respect to the second instance of alleged excessive force on October 13, 2016, Plaintiff allegedly did nothing to warrant a use force. Plaintiff alleges Defendant confronted him regarding grievances filed by Plaintiff. When Defendant ordered Plaintiff to come to the bars of the cell, Plaintiff alleges Defendant attacked Plaintiff without provocation. Defendant does not even address whether Plaintiff has stated a claim for excessive force related to the October 13, 2016 incident in his Rule 12(b)(6) Motion.

### 2. Retaliation

It is well-established that prison officials may not retaliate against a prisoner for exercising his constitutional rights.[49] Moreover, the taking of action against an inmate in retaliation for the inmate's exercise of his First Amendment constitutional rights is a violation of the inmate's constitutional rights.[50] Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his right to complain to supervisory officials about the alleged wrongful conduct of prison security officers. However, since claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.[51]

---

[49] *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986).
[50] *See, Woods v. Smith*, 60 F.3d. 1161, 1164-65 (5th Cir.1995).
[51] *Id.* at 1166.

9

Further, to sustain a showing of a constitutional violation, the plaintiff must assert more than a *de minimis* or inconsequential retaliatory adverse act.[52]

Here, Sanders allegedly used excessive force against Plaintiff on July 12, 2016; in response to which, Plaintiff filed a grievance. Plaintiff also alleges that after the July incident, Sanders offered Plaintiff special favors in exchange for Plaintiff's agreement not to file a grievance against Defendant, which offers Plaintiff rejected.[53] Thereafter, on October 13, 2016, after confronting Plaintiff regarding his grievance, Defendant again inflicted further harm upon Plaintiff, allegedly without reason. Accordingly, Plaintiff has sufficiently alleged a chronology of events from which retaliation may plausibly be inferred.

## RECOMMENDATION

It is **RECOMMENDED** that Defendant's Motion to Dismiss[54] be **GRANTED IN PART**, dismissing only Plaintiff's claims for monetary damages against Major Nicholas J. Sanders in his official capacity; it is **FURTHER RECOMMENDED** that the Motion to Dismiss[55] be otherwise **DENIED** and this matter be referred to the Magistrate Judge for further proceedings.[56]

Signed in Baton Rouge, Louisiana, on January 16, 2019.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] *Morris v. Powell,* 449 F.3d 682, 684-85 (5th Cir. 2017).
[53] R. Doc. 1, ¶¶ 30-32.
[54] R. Doc. 19.
[55] R. Doc. 19.
[56] If the Report and Recommendation is adopted, the parties are advised that they may recommence discovery as set forth in R. Doc. 26.